

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAY WILLIFORD,

        Plaintiff,

                                    CV 06-1289-PK

                                    FINDINGS AND

v.                                    RECOMMENDATION

MULTNOMAH COUNTY,

        Defendant.

PAPAK, Judge:

        This case arises out of an April 21 to May 4, 2004, pretrial incarceration of Plaintiff Kay

Williford ("Williford") at the Multnomah County Detention Center ("MCDC").[1]  On October 28,

2009, Williford filed a Second Amended Complaint which is the operative complaint in this

---

       [1]Williford originally filed this case in 2005 against Multnomah County, the City of
Portland, and two police officers.  That case was dismissed without prejudice as a sanction after
Williford repeatedly failed to show up for deposition.  Williford refiled her case in 2006.  Since
then, the City of Portland and the individual officers were dismissed by stipulated judgment.

Page 1 - FINDINGS AND RECOMMENDATION

matter. (#79.) However, both in their briefs and again on the record at oral argument, the parties

stipulated to the scope and definition of Williford's claims against Multnomah County. First,

Williford voluntarily dismissed the Second, Fourth, Fifth and Sixth Claims for Relief, all

alleging constitutional violations during Williford's August 2003 incarceration, as well as all

Americans with Disabilities Act claims under 42 U.S.C. §12132 and Rehabilitation Act of 1973

claims under 29 U.S.C. §701 et seq. Second, Williford has voluntarily consented to dismiss the

following:

> (1) all claims regarding alleged inadequate medical care and treatment, including
> the treatment of plaintiff's epilepsy and spine condition;

> (2) claims arising out of plaintiff's arrest, including the duration of plaintiff's
> confinement; and,

> (3) claims related to alleged unlawful strip searches upon booking.

(See, Def's Br., #91, at 1-2, Pl's Br., #98, at 2.)

As a result, the parties agree that there are only two remaining claims. The first can

generally be described as a Fourteenth Amendment claim alleging that Williford was wrongly

held in Multnomah County for two weeks on what she refers to as a "psychiatric hold" following

her arrest by Portland Police. The second remaining claim remains nebulous even after

significant probing of plaintiff's counsel at oral argument to further define its parameters. It is a

claim based on the Fourth Amendment, and it will be discussed in more detail below. Because

the claims are brought against Multnomah County, I construe them to be municipal liability

claims brought pursuant to 42 U.S.C. §1983.

Now pending before this court is Multnomah County's Motion for Summary Judgment

(#90). For the reasons set forth below, I recommend that the motion be granted.

Page 2 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249; *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains. *See* Fed. R. Civ. P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322-23; *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The opposing party may not rest on conclusory allegations or mere assertions, *see Taylor*, 880 F.2d at 1045; *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, *see Liberty Lobby*, 477 U.S.

at 249-50; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Taylor*, 880 F.2d at 1045.

## FACTS

Williford was arrested by Portland Police on April 21, 2004. She was charged with violating a stalking order and resisting arrest, and she was arraigned in Multnomah County Circuit Court on April 22, 2004. Bail was set at $52,500. Williford did not post bail. As a result, she remained in custody at Multnomah County Detention Center (MCDC) until May 5, 2004 when she signed a conditional Release Order and Agreement.

Williford has multiple medical issues, including chronic pain and a history of uncontrolled seizures. (See, e.g. #97, Exs. 2, 4, 6, 7; #99.) Uncontrolled seizures are defined by Williford's treating epilepsy doctor as "seizures that are continuing to occur despite medical treatment." (#99, Ex. 6 at 13-14.) On her April 21, 2004 Inmate History Report, Williford reported that she "had 250 seizures last year." (#97, Ex. 4.) Her doctor testified that in an average week in 2003 and 2004 Williford would have two or three seizures. (Id.)

Because Williford suffers frequent seizures she was initially assigned to a lower bunk at MCDC to prevent injury from falling. (#97, Exs. 4-5.) She saw a doctor on April 23, 2004, regarding several issues, including "multiple concerns of seizures, sometimes falls to the floor and loses consciousness." (#97, Ex. 7.) The doctor recommended providing her with a mattress on the floor. (Id.) Williford's treating epilepsy doctor testified that a lower bunk or mattress on the floor are appropriate seizure precautions. (#99 at 15-16.) During her 2004 detention,

Williford estimates she had between four and six seizures.  Williford also reports that she has

chronic pain and shoulder pain, and she alleges she was "subjected to forcible handling by

defendant's jail personnel that exacerbated her physical pain."  (#97, Statement of Fact c.)

Williford testified that she was confused about why she was in Multnomah County

custody and she thought she was detained based on a "psychiatric hold."  Williford states she

does not know who put a psychiatric hold on her, nor does she know who had authority to do so.

When Williford came into MCDC custody on April 21, 2004, she was assigned to Module 8C on

the eighth floor.[2]  (#101.)  At that time, Module 8C was used for close custody or protective

custody inmates.  (Id.)  These are inmates that, for one reason or another, need to be kept apart

from other inmates based on their history or behavior.  (Id.)  During the time Williford was in

custody, inmates that required constant monitoring and treatment for acute psychiatric issues

were housed in the psychiatric infirmary located in Module 4D.  Williford was never assigned to

Module 4D, but remained in Module 8C throughout her 2004 incarceration.  (Id.)

## LAW AND ANALYSIS

### I. Alleged Constitutional Violations

Municipality liability under 42 U.S.C. § 1983 is contingent on an underlying violation of

constitutional rights.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89

L.Ed.2d 806 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands

---

[2]In conjunction with its reply brief, Multnomah County submitted additional evidence by
way of affidavits and exhibits.  At oral argument, I asked plaintiff's counsel if he objected to the
additional evidence, if he would like additional time to object to the evidence, or if he would like
time to offer additional evidence in response.  Plaintiff's counsel stated he had no objections,
declined my invitation for additional time in which to make objections or offer evidence, and
stipulated that I may consider the reply evidence in resolving this motion for summary judgment.

Page 5 - FINDINGS AND RECOMMENDATION

of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994)("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights."); *Jackson v. City of Bremerton*, 268 F.3d 646, 653-654 (9th Cir. 2001) ("Neither a municipality nor a supervisor . . . can be held liable under § 1983 where no injury or constitutional violation has occurred.").  Even if Williford could somehow satisfy the municipal liability requirements discussed below, her allegations of constitutional violations fail as a matter of law and summary judgment should be granted in favor of Multnomah County.

## A. Fourteenth Amendment

Williford's allegations regarding constitutional violations are vague, at best.  It seems all parties agree her Fourteenth Amendment claim revolves around an alleged "psychiatric hold" which she claims violated her due process rights.  With respect to that claim she asserts "Multnomah County is liable to plaintiff . . . for locking her up in a mental ward at [MCDC] without mental health evaluation or any form of due process, thereby creating the functional equivalent of a 'psychiatric hold,' which is not excused by plaintiff having to post bail."  (Pl's Br. at 3.)

Williford does not cite any case law to support her theory that it was a violation of her Fourteenth Amendment rights to put her "on a psychiatric hold without notice and an opportunity for a hearing."  Instead, she asserts there is a "factual dispute about whether she was actually detained on a *de facto* hold, or was even consulted." (Pl.'s Br. at 7.)  However, there is no probative evidence in this summary judgment record that Williford was detained "on a

Page 6 - FINDINGS AND RECOMMENDATION

psychiatric hold." Williford does not contest that she was arrested on the evening of April 21, 2004 for violating a stalking order. It is also undisputed that she was arraigned the next day, charged with violating the stalking order and resisting arrest. She does not dispute that bail was set at $52,000, nor does she dispute that she failed to post bail. Because she did not post bail, she remained at MCDC. The uncontroverted evidence also establishes that Williford was housed in MCDC Module 8C, and not in the psychiatric infirmary which is Module 4C. The only evidence that Williford was placed "in the mental ward" is Williford's own deposition testimony in which the following dialogue took place:

> Q. Do you believe that you were in custody because of a psychiatric hold in 2004?
> A. That's what I understood, sir.
> Q. It did not have to do with the violation of the stalking order?
> A. No, sir. I was confused why.
> Q. Are you still confused to this day as to why you were in custody for two weeks?
> A. Yes, sir.

(#93, Ex. 4 at 3-4.) Williford's contradictory and self-serving statements are not sufficiently probative to create a triable issue of fact regarding whether she was housed in the psychiatric infirmary or in another part of MCDC.

Even accepting as true Williford's contention that she was "placed in a mental ward," in order to demonstrate a procedural due process violation, Williford must identify a constitutionally protected liberty or property interest, and she has failed to do so. *See Board of Regents v. Roth*, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A detainee does not have a protected interest to be placed in any particular housing unit. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of

Page 7 - FINDINGS AND RECOMMENDATION

confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)

(citation omitted). However, "a liberty interest in avoiding particular conditions of confinement

may arise from state policies or regulations, subject to the important limitations set forth in

*Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)." *Id.*

Under *Sandin*, detention regulations may create a federally enforceable liberty interest

only where their application to an inmate "inevitably" affects the duration of the inmate's

sentence or imposes an "atypical and significant hardship upon the inmate in relation to the

ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487. The *Sandin* analysis applies to

conditions of confinement for pretrial detainees which are not imposed as punishment. *See*

*Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996).

Here, Williford has not alleged that her classification affected the duration of her

confinement at MCDC. She has also failed to submit evidence that the alleged classification

caused her to suffer any "atypical and significant hardship" so as to give rise to a liberty interest.

*Sandin*, 515 U.S. at 484, 487. Indeed, Williford has not cited any cases to support her contention

that her Fourteenth Amendment rights were violated or even provided an argument to explain the

substance of her claim. As a result, I recommend granting Multnomah County's Motion for

Summary Judgment with respect to Williford's Fourteenth Amendment claim.

**B. Fourth Amendment**

Williford's Fourth Amendment claim is even more difficult to parse. The following

allegations in her Second Amended Complaint relate to her Fourth Amendment claim:

> 1. Plaintiff is a resident of Multnomah County, Oregon and is a citizen of the
> United States of America.

2. Plaintiff is a qualified individual with a disability within the meaning of 42 USC 12131(2) in that she is physically disabled with poorly controlled epilepsy and a painful spine condition that require reasonable modifications to rules, policies or practices for eligibility and receipt of services provided by a public entity.

3. Multnomah County is a political subdivision of the State of Oregon and has formally adopted and implemented the policies, practices and customs complained of herein under color of law. Multnomah County received funds from the U.S. government.

4. On or about April 21, 2004, Plaintiff was arrested and transported to a Multnomah County detention facility.

5. Multnomah County wrongfully detained Plaintiff on a two-week psychiatric hold following her April 21, 2004 arrest.

6. Pursuant to blanket policies and customs, Multnomah County stripped and body cavity searched Plaintiff following her April 21, 2004 arrest.

7. Prior to her incarceration in April and May 2004, Plaintiff was under the care of several physicians who prescribed and/or recommended she use:
> a) a vagus nerve stimulator;
> b) a wheelchair;
> c) pain medications;
> d) epilepsy medications; and
> e) other necessary and proper medications.

8. During her incarceration in April and May 2004, Multnomah County prohibited Plaintiff from having or using any or all of the items described in paragraph 7 above.

9. During her incarceration in April and May 2004, Plaintiff and other persons informed Multnomah County that:
> a) Plaintiff was an epileptic;
> b) Plaintiff had a painful spine condition;
> c) Physicians had prescribed and/or recommended Plaintiff use the items described in paragraph 7, above; and
> d) Plaintiff did not have any adverse psychological or psychiatric conditions.

10. During her incarceration in April and May 2004, Plaintiff suffered four or more untreated epileptic seizures and untreated pain as a result of defendant's

deliberate indifference to providing the medical treatment set forth above.

\* \* \*

12.  Plaintiff's damages from Multnomah County's conduct, described above, are $500,000.

13. Plaintiff is entitled to an award of attorneys fees when she prevails pursuant to 42 USC 1988.

\* \* \*

24.  Multnomah County's conduct, described above, unlawfully deprived plaintiff of her constitutional and civil rights guaranteed to her under the Fourth Amendment to the United States Constitution, as well as causing Plaintiff to suffer fear, pain, shock, loss of freedom, humiliation, anger, and untreated epileptic seizures.

(#79, Second Amended Compl.)

In the one-page section of her brief entitled "Plaintiff's Fourth Amendment Claim" she

cites no authority and provides no explanation regarding the substance of her Fourth Amendment

claim.  Instead, she states that "awareness and documentation of her [medical] condition can be

charitably termed inconsistent at best and demonstrably less tha[n] its policy manual requires."

(Pl.'s Br. at 6.)  Williford then states that Multnomah County knew epilepsy is prevalent at

MCDC, that there was a lack of policy, and that "[s]uch conduct is deliberate indifference that

violates *Monell*, and it may be further indicative of customs filling any void in detailed policy,

also in violation of *Monell*."  (Id.)

To complicate matters further, as noted previously but restated here for clarity, Williford

consented to dismiss: (1) all claims regarding alleged inadequate medical care and treatment,

including the treatment of plaintiff's epilepsy and spine condition;  (2) claims arising out of

plaintiff's arrest, including the duration of plaintiff's confinement; and (3) claims related to

Page 10 - FINDINGS AND RECOMMENDATION

alleged unlawful strip searches upon booking.  (See, Def's Br. at 2; Pl's Br. at 2.)

Regardless of how her Fourth Amendment claim is couched, it fails as a matter of law because protections under the Fourth Amendment only extend to pre-arraignment arrestees up until the time of arraignment.  *See e.g., Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996).  It is undisputed that Williford was arraigned on April 22, 2004.  Because Williford's claims encompass her two weeks of custody after arraignment, her Fourth Amendment claim fails on its face.  Williford did not refute or even address this issue in her brief.  Accordingly, I recommend granting summary judgment on Williford's Fourth Amendment claim.

## II. Municipal Liability

Even if a constitutional violation could be discerned from Williford's allegations, Multnomah County may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior.  *Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978); *Board of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388 (1997).  Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38.  Alternatively, liability may be based on an omission of a policy, practice or custom amounting to deliberate indifference.  *See Gibson v. City of Washoe, Nevada*, 290 F.3d 1175 (9th Cir. 2002); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204 (1989).

## A. Affirmative Policy or Practice

There are three ways to show the existence of an affirmative policy or practice of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (*quoting Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002)).

Williford has submitted as evidence some Multnomah County policies and training materials. In her brief she asserts in a conclusory fashion that "Defendant's documents either reflect official policy of Multnomah County, or they may be indicative of defendant's alleged lack of compliance with policy in the face of clear awareness of perceived needs of some detainees like plaintiff." (Pl's Br. at 2.) However, Williford has not mounted a facial attack on any specific official policy of Multnomah County. She has not identified a pattern of repeated conduct that would establish a practice or custom under *Monell.* And, she has not identified any decision-makers whose acts may represent official policy, nor has she shown or argued that an official with final policymaking authority either delegated that authority or ratified the decision of a subordinate. As a result, Williford has not established municipal liability against Multnomah County based on an affirmative policy or practice.

## B. Omissions

Williford also contends in her brief that Multnomah County "must acknowledge

significant omissions in policy leaving plaintiff and others at the constitutional mercy of MCDC

personnel who must enact their own practices and customs for dealing with each particular

situation." (Pl's br at 2-3.)  She also states that the county knew it needed to train its personnel,

that the county "allegedly failed to follow its own policies consistent with that training," and that

the county "may have relied on practices and customs that were deliberately indifferent to those

needs and foreseeably resulted in injuries and damages to plaintiff."  (Pl.'s Br. at 5-6, *citing*

*Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002)).  Williford's reliance on *Gibson* and

use of the phrase "deliberate indifference" suggest that she may be basing her claims on a policy

omission.

    To establish a policy omission, a Williford must show that: (1) a county employee

violated her rights; (2) that Multnomah County has customs or policies that amount to deliberate

indifference; and (3) that these policies were the moving force behind the employee's violation of

Williford's constitutional rights, "in the sense that the County could have prevented the violation

with an appropriate policy." *Gibson*, 290 F.3d at 1194.

    Williford has not offered argument or produced evidence regarding any of these

requirements.  First, she has not identified any Multnomah County employee or defined how any

particular employee at any time violated her rights.  Second, "[d]eliberate indifference is a

stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999) (*quoting*

*Brown,* 520 U.S. at 410, 117 S.Ct. 1382). "To prove deliberate indifference, the plaintiff must

show that the municipality was on actual or constructive notice that its omission would likely

result in a constitutional violation." *Gibson*, 290 F.3d at 1186.  Deliberate indifference to a

person's constitutional rights occurs when the need for more or different action "is so obvious, and the inadequacy [of the current procedure is] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. In other words, the omission "must be obvious and violation of constitutional rights must be a highly predictable consequence." *Plumeau*, 130 F.3d at 439 n. 4.

Here, because it is so unclear what Williford contends the county did or what it should have done differently, it is difficult to even address the deliberate indifference requirement. Williford points out that Multnomah County was aware that detainees could have seizures while in custody, and that a seizure can be life threatening. But unlike other plaintiffs who have survived summary judgment, Williford fails to inform the court where Multnomah County's policies, training programs, or supervision went wrong.

In *Gibson*, for example, the plaintiff survived summary judgment because a jury could have found a constitutional violation resulted from an omission in the county's policy regarding the handling of prescription medication. In *Gibson*, two specific policies were identified. Each directive in the policies was analyzed. And, most important for an omission claim, there was evidence and argument identifying with particularity how the policies were deficient and what result was likely from those deficiencies. In this case, Williford has failed not only to identify specific policies, but has also failed to identify deficiencies or omissions in those policies (or training under them) that could result in a constitutional violation.

Williford is also deficient on the third requirement for imposing municipal liability based on a policy omission. To be a "moving force" behind a constitutional injury, the identified

deficiency in the county's policies must be "closely related to the ultimate injury." *Gibson*, 290 F.3d at 1196. Williford's burden is to show that injury would have been avoided if the county had a proper policy in place. *Id.* This record is simply devoid of facts that show a constitutional injury caused by a county policy or policy omission.

In sum, even if a constitutional violation could be discerned from Williford's allegations, she has presented insufficient evidence of a policy, practice or custom that was a direct cause of her alleged constitutional injuries.

## CONCLUSION

For the foregoing reasons, Defendant Multnomah County's motion for summary judgment (#90) should be granted and judgment should be entered accordingly.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 3rd day of September, 2010.

Honorable Paul Papak
United States Magistrate Judge

Page 15 - FINDINGS AND RECOMMENDATION