FILED

DEC 2 8 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAY WILLIFORD,

        Plaintiff,

                                 CV 06-1289-PK

                                 FINDINGS AND

v.                                 RECOMMENDATION

MULTNOMAH COUNTY,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Kay Williford brought this action in its present form against defendant

Multnomah County arising out of two periods of incarceration at the Multnomah County

Detention Center ("MCDC"), the first in August 2003 and the second in April and May 2004.

After Williford voluntarily withdrew all but two of her claims, this court recommended granting

summary judgment in favor of Multnomah County on Williford's remaining claims. Now before

the court is Multnomah County's motion for sanctions (#118) seeking an award of $5,000 as well

as attorney fees and costs as sanctions against Williford's current counsel pursuant to 28 U.S.C. §

Page 1 - FINDINGS AND RECOMMENDATION AND ORDER

1927. Also before the court is defendant's bill of costs (#108) pursuant to Local Rule 54.1

seeking $2,612.55 in deposition fees. I have considered the motions and all of the pleadings on

file. For the reasons set forth below, Multnomah County's motion for sanctions should be

denied. The costs described in Multnomah County's bill of costs, however, should be taxed

against Williford.

### FACTUAL BACKGROUND

The underlying dispute in this case involved two different incidents where Williford was

arrested and incarcerated in a Multnomah County detention facility. Williford alleged that she

was arrested on August 23, 2003, sent to MCDC, stripped and body-cavity searched, held, and

prohibited from accessing medications and medical devices that she required for her epilepsy and

spine condition. Williford also alleged that on April 21, 2004, she was again arrested,

transported to a detention facility, stripped and searched, and denied appropriate medical care.

Regarding this second incarceration, Williford alleged that she was wrongfully detained on a

two-week psychiatric hold, during which she suffered multiple seizures and rough handling by

jail personnel that exacerbated her chronic pain. In fact, Williford was never detained on a

psychiatric hold in April 2004. Rather, she was arraigned in Multnomah County Circuit Court on

April 22, 2004 and, because she did not post bail, she remained in custody in a non-psychiatric

unit in MCDC until May 5, 2004, when she signed a conditional Release Order and Agreement.

This case progressed haltingly over a five year span and involved four different attorneys,

two of whom are the subject of defendant's motion for sanctions.[1] Williford originally filed an

_____

[1] Multnomah County never explicitly names the attorneys against which it seeks
sanctions, instead referring generally to Williford's "current counsel of record." (D.'s Reply Br.,
#122, at 5.) As discussed in more detail below, however, only James Leuenberger and Herbert

action on February 2005 against the City of Portland, Multnomah County, and the two Portland
Police officers who arrested her.[2]  (Case # 05-CV-172 MO, #1.)  Judge Mosman dismissed that
action without prejudice in March 2006.  In September 2006, Williford acquired new counsel,
Gerri Sue Lent, and refiled the present action naming the same parties as defendants.  (Compl.,
#1.)  That complaint alleged claims for excessive force under 42 U.S.C. § 1983, violations of the
Fourth Amendment, medical negligence, negligent training and supervision, and battery.  In
September 2007, the district court adopted this court's findings and recommendation dismissing
the action with prejudice pursuant to the applicable statutes of limitations.  (#50.)

    In November 2007, attorney James Leuenberger joined Williford's legal team to represent
her in an appeal to the Ninth Circuit.  (Leuenberger Decl., #115.)  In April 2009, the Ninth
Circuit reversed the district court's decision and remanded.  (#57.)  Leuenberger then recruited
attorney Herbert Grey to serve as co-counsel, since Lent was on an extended trip in China where
she still apparently remains. (Leuenberger Decl. #115, at 1; Grey Decl., #114, at 2.)  Lent, Grey
and Leuenberger continue to be designated as Williford's attorneys of record, although
declarations and docket entries suggest that Lent has not been involved in representing Williford
since late October 2007.

    In August 2009, Williford dismissed her claim against the City of Portland and the two
Portland police officers, leaving Multnomah County as the only defendant.  (#71.)  In October
2009, prompted by a recent decision from the Ninth Circuit, Williford sought and received leave

---

Grey can be accurately described as currently representing Williford, even though Gerri Sue Lent
technically remains listed as counsel.

    [2]  Williford's attorney at the time was Leonard Berman.

to amend her complaint to include additional claims based on the Americans with Disabilities Act and § 504 of the Rehabilitation Act. (Grey Decl., #114 at 3.) That complaint alleged six total claims for relief, three pertaining to each period of incarceration, including violations of the Eighth and Fourteenth Amendments based on denial of medical treatment, violations of the Fourth Amendment, and violations of the Americans with Disabilities Act under 42 U.S.C. §12132 and Rehabilitation Act of 1973 claims under 29 U.S.C. §701 et seq.

Williford informally voluntarily withdrew all but two of those claims before defendant filed a motion for summary judgment on June 4, 2010, although the timing of those withdrawals is not well documented within the record. Briefing, however, suggests that Williford informally withdrew claims pertaining to her strip searches through an email on April 19, 2010, after counsel for Multnomah County brought to Williford's counsel's attention a recently decided Ninth Circuit case undermining those claims. (Pl.'s Br., #121, at 4.) Williford apparently informally withdrew her claims pertaining to deliberate indifference by an email on May 28, 2010, after a May 3, 2010 deposition where Dr. William Brewster Smith testified that Multnomah County had not acted with deliberate indifference towards Williford's medical conditions. (D.'s Memo. in Support, #119, at 9; Grey Decl., #114, at 3.)

The first of Williford's two remaining claims was a Fourteenth Amendment claim alleging that she was wrongly held in MCDC for two weeks on what she refers to as a "psychiatric hold" following her arrest by Portland Police. The second remaining claim rather broadly alleged an unlawful deprivation of Williford's "constitutional and civil rights under the Fourth Amendment." On September 3, 2010, I recommended granting Multnomah County's motion and dismissing both remaining claims. (F&R, #103.) In that Findings and

Page 4 - FINDINGS AND RECOMMENDATION AND ORDER

Recommendation, I ruled that Williford's Fourteenth Amendment claim failed as a matter of law because I found undisputed evidence that Williford was not placed in a "mental ward," but was instead incarcerated in a close-custody unit in MCDC after being arraigned on April 22, 2004. I also determined that Williford failed to identify any constitutionally protected liberty or property interest as necessary to establish a procedural due process violation. Additionally, I found that Williford's Fourth Amendment claim failed as a matter of law because Fourth Amendment protections apply only pre-arraignment, while Williford's claim encompassed two weeks of custody occurring after her arraignment. Finally, I determined that even if Williford had properly alleged constitutional violations, Multnomah County could not be held vicariously liable for the acts of its employees because Williford failed to offer evidence of any affirmative policy, practice, or customer that directly caused her alleged constitutional injuries. Judge Mosman adopted my recommendation without modification and dismissed Williford's claims on September 24, 2010. Multnomah County's bill of costs and motion for sanctions followed.

## LEGAL STANDARDS

### I.    Attorney Sanctions under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Under unambiguous Ninth Circuit jurisprudence, it is clear that Section 1927 applies only to the unnecessary multiplication of proceedings within the scope of an already filed action, and is entirely inapplicable to the filing of initial pleadings in an action:

> Because the section authorizes sanctions only for the "multipli[cation of]
> proceedings," it applies only to unnecessary filings and tactics once a lawsuit has
> begun. We have twice expressly held that § 1927 cannot be applied to an initial
> pleading. *See Zaldivar* [*v. Los Angeles*], 780 F.2d [823,] 831 (9th Cir. 1986)
> (under § 1927, "the *multiplication* of proceedings is punished, thus placing *initial*
> pleadings beyond" the section's reach) (emphasis in original); *Matter of Yagman*,
> 796 F.2d 1165, 1187 (9th Cir.) ("Section 1927 does not apply to initial pleadings,
> since it addresses only the multiplication of proceedings. It is only possible to
> multiply or prolong proceedings after the complaint is filed."), *amended*, 803 F.2d
> 1085 (9th Cir. 1986), *cert. denied*, 484 U.S. 963 (1987). In case these prior
> holdings were insufficiently clear, we restate the rule here. The filing of a
> complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but
> it may not be sanctioned pursuant to § 1927.

*Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996).

Sanctions may moreover only be imposed pursuant to Section 1927 upon a finding of

subjective bad faith on the part of the party to be sanctioned. *See New Alaska Development*

*Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney

knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the

purpose of harassing an opponent," *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)

(citations omitted). A frivolous filing is one that is "*both* baseless *and* made without a reasonable

and competent inquiry," *Keegan Mgmt.*, 78 F.3d at 434 (emphasis original), and in the context of

Section 1927, "frivolousness should be understood as referring to legal or factual contentions so

weak as to constitute objective evidence of improper purpose." *Thomas v. Girardi*, 611 F.3d

1027, 1062 (9th Cir. 2010). Therefore, "[f]or sanctions to apply, if a filing is submitted

recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus,

while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be

sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *Keegan Mgmt.*,

78 F.3d at 436.

Page 6 - FINDINGS AND RECOMMENDATION AND ORDER

## ANALYSIS

I.    **Multnomah County's Motion for Sanctions**

Multnomah County argues that Williford's attorneys delayed in voluntarily dismissing claims after being placed on notice that those claims were frivolous and pursued their remaining claims in the face of clearly contradictory official records. Therefore, Multnomah County reasons, this court should sanction Williford's attorneys because their failure to voluntarily dismiss Williford's second amended complaint in its entirety was both reckless and frivolous, thereby constituting conduct in bad faith sanctionable under Section 1927.[3]

In contrast, Williford's attorneys contend that they pursued Williford's claims in good faith. They assert that they voluntarily withdrew Williford's strip search and deliberate indifference claims when case law or evidence surfaced that undermined those claims. Moreover, they pursued Williford's Fourteenth and Fourth Amendment claims because they did not know that Williford had been criminally arraigned until Multnomah County presented evidence of Williford's arraignment in its summary judgment briefing.[4]

Initially, I note that although Section 1927 refers to "multiplication" of proceedings, Section 1927 also imposes a duty "to correct or withdraw litigation positions after it becomes obvious that they are meritless." *Girardi*, 611 F.3d at 1064. Thus, delaying withdrawal of

---

[3] This court notes that Multnomah County does not seek sanctions against Williford's attorneys under Fed. R. Civ. P. 11(c)(2).

[4] Williford's attorneys blame Multnomah County for their lack of knowledge, asserting that Multnomah County failed in discovery to provide documents pertaining to Williford's arraignment or alleged psychiatric hold or identify any occurrence witnesses. Multnomah County contends that those documents were readily accessible public records and that it never withheld the names of relevant witnesses.

known meritless claims or pursuing such claims could theoretically subject an attorney to Section 1927 sanctions. However, I am not persuaded that the attorneys' conduct in this case rises to the level of sanctionable bad faith. First, when Williford's attorneys' were confronted with case law undermining Williford's strip search claim, they withdrew that basis for relief. Similarly, when a medical expert opined in deposition that Multnomah County had not acted with deliberate indifference to Williford's medical condition, Williford's attorneys withdrew that theory.[5] Neither of these actions suggest Williford's attorneys recklessly offered frivolous arguments or filings.

Although the attorneys' continued pursuit of Williford's Fourteenth and Fourth Amendment claims certainly suggests careless legal representation, it does not amount to recklessness in raising arguments so frivolous as to "constitute objective evidence of improper purpose." *Girardi*, 611 F.3d at 1062. Both parties agree that Williford's Fourteenth and Fourth Amendment claims failed because they relied on the incorrect factual predicate that Williford was detained on a psychiatric hold. Additionally, it appears that none of Williford's four attorneys, including Grey and Leuenberger, undertook a simple investigation to confirm Williford's contention that she was detained on a psychiatric hold.[6] Nevertheless, Williford's attorneys apparently believed Williford's claims to be meritorious until very late in the case.

---

[5] Multnomah County argues that Williford's attorneys should have known that Williford's deliberate indifference argument was meritless based on their review of Williford's medical records in December 2009. I disagree. Williford's attorneys' overly optimistic initial interpretation of the medical record is not tantamount to bad faith conduct.

[6] Even if Williford's first two attorneys had engaged in such an investigation, they apparently failed to pass on their case records to Williford's present counsel. (Grey Decl., #114, at 2.)

Page 8 - FINDINGS AND RECOMMENDATION AND ORDER

(Pl.'s Br., #121, at 5.)  For example, even as recently as February 18, 2010, Williford testified in her deposition that she understood she was in custody because of a psychiatric hold and that correctional officers told her twice that she was placed in a "mental unit" and Williford's counsel relied on that testimony in pursuing Williford's constitutional claims.  (Grey Decl., #97, Ex. 9 at 16; Blankfeld Decl., #93, Ex. 4 at 3-4.)   When presented with proof of Williford's arraignment during summary judgment briefing, Williford's attorneys shifted their argument, apparently in good faith, claiming that Williford was held on the functional equivalent of a psychiatric hold, since she testified that deputies placed her in a separate psychiatric unit while she was detained. (Pl.'s Resp., #96, at 7.)

However, Williford's attorneys acquiesced when presented with clear evidence that Williford's claims were fruitless.  When Multnomah County filed its reply brief along with a declaration from a Multnomah County Sheriff working in jail classification, it become completely obvious that Williford was not assigned to a mental unit or detained on the equivalent of a psychiatric hold.   (McDade-Hood Decl., #100, at 1-3.)  At oral argument on the summary judgment motion, this court gave Williford's attorneys the opportunity to object to that new evidence, take additional time to respond, or present additional evidence in response.  (F&R, #103, at 5 n.2.)  Choosing any of these options would likely have enabled Williford's attorneys to unnecessarily extend the proceedings on obviously meritless claims.  However, Williford's attorneys, to their credit, declined to challenge Multnomah County's evidence or delay the court's consideration of the summary judgment motion.  Thus, the attorneys all but withdrew their claims by acceding to evidence that was clearly fatal to those claims.  In sum, the attorneys did not violate the Section 1927 duty to correct or withdraw litigation positions when it becomes

Page 9 - FINDINGS AND RECOMMENDATION AND ORDER

obvious that they were meritless. *See Girardi*, 611 F.3d at 1064.

Additionally, the attorneys' prior conduct in this case also does not suggest that they operated with an improper purpose to delay or multiply the proceedings. First, I note that Williford's current attorneys entered this case in mid-stream. It appears that Leuenberger originally intended only to represent Williford on appeal, but increased his involvement when Lent, the primary attorney at the time, remained out of the country. After Leuenberger prevailed on his appeal to the Ninth Circuit, he recruited Grey to lead Williford's representation before the district court. Then, after remand, the attorneys continued to pursue the case in good faith. They conducted discovery to determine whether the Portland police officers had been properly served and dismissed those officers and the City of Portland as defendants when they determined that service had not been accomplished. (Grey Decl., #114, at 2.) Additionally, they sought to add claims prompted by a recently decided Ninth Circuit case, but eventually withdrew them when it became obvious that they would fail. Overall, the attorneys' representation reflects a sincere but ineffectual attempt to vindicate Williford's constitutional rights. Thus, although Williford's attorneys failed to actively investigate the basis of Williford's claims and consequently advanced arguments that were ultimately found to be factually unsupported, their conduct did not amount to subjective bad faith as required for sanctions under Section 1927.

## II.    Bill of Costs

Federal Rule of Civil Procedure 54(d)(1) and Local Rule 54 provide for the clerk to tax costs other than attorney's fees in favor of the prevailing party. Fed. R. Civ. P. § 54(d)(1); L.R. 54.1, 54.2. Multnomah County filed a bill of costs requesting $2,612.55 in total costs, comprising deposition fees for Dr. Brewster, an expert witness, deposition appearance fees for a

court reporting service, and transcript production fees. Section 1920 and case law explicitly permit taxing all of these costs. 28 U.S.C. § 1920(2), (3) (transcripts and witness fees); *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177-178 (9th Cir. 1990) (per curiam) (§ 1920 may be fairly interpreted to permit taxing deposition expenses). Moreover, counsel for Multnomah County properly filed an affidavit verifying those costs as required by 28 U.S.C. § 1924. (*See* Blankfeld Decl., #109.) Since Williford failed to file objections to Multnomah County's bill of costs, the clerk should tax those costs against Williford.

## CONCLUSION

For the reasons set forth above, I recommend that Multnomah County's motion (#118) for sanctions be denied, but that Williford be taxed in the amount of $2,612.55, as described in Multnomah County's bill of costs (#108).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

//

//

//

//

//

Page 11 - FINDINGS AND RECOMMENDATION AND ORDER

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


Dated this 28th day of December, 2010.

Honorable Paul Papak
United States Magistrate Judge